82 So.3d 163 (2012)
S.M., the Mother, Petitioner,
v.
R.M., the Father, Respondent.
No. 4D11-3632.
District Court of Appeal of Florida, Fourth District.
March 7, 2012.
Rehearing Denied March 30, 2012.
Elizabeth J. Kates, Pompano Beach, and Lisa Marie Macci of Lisa Marie Macci, P.A., Boca Raton, for petitioner.
*164 Greg A. Lewen and Allegra Phillips Clemente of Greg A. Lewen, P.A., Fort Lauderdale, for respondent.
Juliette E. Lippman of Kirschbaum, Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, as guardian ad litem.
GERBER, J.
The mother appeals the circuit court's sua sponte shelter order placing the child in the father's custody. The mother argues that the court denied her request to be heard during the shelter hearing and thereby violated her right to due process. We treat the mother's appeal as a petition for writ of certiorari, grant the petition, and remand with directions. We withhold issuance of the writ on the assumption that the circuit court shall comply with our directions.
A detailed history of the extensive record which the parties have presented to this court is necessary to better understand the issue which the petition presents.
In 2006, a Broward County family court judge entered a final judgment dissolving the marriage between the mother and the father. The final judgment provided, in pertinent part, that the mother was to have primary custody of the parties' only child, with the husband having established rights of access to and visitation with the child on certain dates. The judge retained jurisdiction to enforce the final judgment.
In 2009, the father filed a petition for modification. The father alleged that the mother was interfering with the father's access to and visitation with the child. The father also alleged that the child had developed psychological issues for which the mother was not seeking treatment. The mother disputed these allegations.
In January, 2011, the father filed an emergency motion seeking to be granted sole custody of the child. The father alleged that an expert appointed to evaluate the child found that the mother was severely alienating the child. The mother disputed these allegations.
In February and April, 2011, the Broward County family court judge held four evidentiary hearings on the father's motion. During these hearings, the father presented his evidence. However, the mother did not complete her presentation of evidence. The judge did not rule on the father's motion.
In June, 2011, the family court judge recused himself without ruling on the father's motion. The clerk assigned the case to a new family court judge.
In July, 2011, the father filed with the new family court judge an updated emergency motion seeking sole custody of the child. The father represented that earlier that month, the Department of Children and Families issued a report finding that the mother was causing mental injury to the child. According to the father, however, the Department was not filing a dependency petition because of his pending motion. The father requested that the judge appoint a guardian ad litem for the child and set another evidentiary hearing on his motion.
On July 29, 2011, the new family court judge held a brief hearing on the father's requests. The mother objected to the father's requests. The judge entered an order appointing a guardian ad litem and directing the guardian to file a report with her recommendations for parental responsibility and time-sharing for the child. The judge entered a separate order setting a two-hour evidentiary hearing on the father's motion for September 15, 2011. The judge later rescheduled the evidentiary hearing due to scheduling conflicts. The *165 judge ultimately set the two-hour evidentiary hearing for October 5, 2011.
At the October 5th hearing, the father was present with his attorney and the mother was present with her attorney. The child was not present. The court stated that the first issue was whether the father's motion to change custody was an emergency. The court called the guardian ad litem as the first witness. The court asked the guardian if, based on her investigation, this matter was an emergency. The guardian responded it was. The court announced that it would proceed with the hearing. The court accepted the guardian's report into evidence. In the report, the guardian reported on her personal observations of the child's separate interactions with the father and the mother. Based on those observations and other research which the guardian performed, she opined that the mother was causing mental injury to the child. The guardian recommended that the court appoint certain experts to treat the child and to provide therapy to the family. The guardian further recommended that the court grant the father temporary sole custody and ultimate decision-making authority regarding the child's treatment. The guardian did not discuss the possibility of commencing a shelter proceeding or a dependency proceeding pursuant to Chapter 39, Florida Statutes.
The court then called the Department's investigator as the next witness. The investigator was based in Palm Beach County because the child was living in Palm Beach County. The investigator testified that, based on his observations, the child was suffering maltreatment and mental injury while in the mother's custody. The investigator stated that the parental alienation alleged in this case was "beyond anything that any of us have ever seen." The court asked the investigator what the Department did to protect the child based on his findings. The investigator testified that he wanted to remove the child and presented the case to a Department attorney for review. According to the investigator, however, the attorney responded that the Department could not remove the child because the mental injury already occurred and because the family court proceeding vested jurisdiction in Broward County. The mother objected on hearsay grounds. The judge overruled the objection.
Then, approximately ten to fifteen minutes into the hearing's allotted two hours, and without the judge giving the mother any opportunity to be heard, the following exchange occurred:
Judge: It is this court's opinion that the primary responsibility for the safety of children, until there is a court hearing, lies in the Department of Children and Families. And that responsibility cannot be abdicated to a family court, and just for the reason of what happened in this case ... that judges get recused, judges change, and hearings get postponed.
....
Judge: [The Department has] an independent duty to file a dependency action.
Investigator: I will do so immediately if you ask me to, Your Honor.
Judge: Absolutely. It is a dependency. It doesn't belong in family court. Do you need me to sign a shelter order?
Investigator: I would like that, yes, Your Honor.
Mother's Attorney: Can I cross-examine him before you sign a shelter order?
Judge: No, ma'am. There is a finding... of maltreatment and mental injury, ma'am. It is not my case. This is not a family case. This is a dependency case. *166 You can argue it to the dependency judge, okay? This hearing is over.
....
Investigator: I believe, Your Honor, because the abuse occurred and is occurring in Palm Beach County, it would go to a Palm Beach County court and shelter it in Palm Beach County court.
Judge: Okay. To be in Palm Beach County.
Mother's Attorney: Now, is this a transfer or actual shelter?
Judge: This is an actual shelter. That means that a Palm Beach judge has to have a hearing within 24 hours.
....
Judge: Do we have a statement of procedures for the dependency court in Palm Beach. I don't think we do.
Investigator: I can basically state how it will go.
Judge: Why don't we do that because it's an oral statement of dependency per summary procedures in Palm Beach County. Go ahead.
....
Investigator: Okay. The child would be removed by me or one of my delegates upon the commencement of the school day. ... And then at that point we would contact the placement division to determine whether the child would be placed. Of course the first place we look to place the child is with relatives.
....
Judge [to the investigator]: May I order the direct placement with the father on a temporary basis ... ?
....
Mother's Attorney: I object to the entire lack of due process in this case, to the procedure that has been followed, the questioning, and my failure to be allowed to put on any witnesses, the sudden urgency of the hearing. ... The guardian ad litem's report being admitted without any cross-examination and my [not being allowed] to put on one witness.
....
Judge [to the mother's attorney]: Excuse me. I can't listen to you and write at the same time. I will give you a chance. Just let me do that.
....
Judge [to the investigator]: At this point do you need to take the child ... or can we order that the father pick up the child?
Investigator: I believe that we can allow the father to pick up the child.
Judge: Okay. So I'm going to change that, father and maintained in father's sole custody pending DCF investigation.
....
Mother's Attorney: Judge, I would like to request a stay pending appeal to the Fourth DCA.
Judge: Denied.
Mother's Attorney: And I would like to talk about the history of this case.
Judge: I think that is for the Palm Beach dependency judge, and I understand that you are a family lawyer. ... The dependency proceedings are emergency proceedings. This is just a fingers in the dyke momentary proceeding. Within 24 hours you are going to be before a dependency judge. So that all [this] is is a 24-hour order. It doesn't extend beyond 24 hours. In 24 hours the dependency judge can decide to go forward with this or kick it back here. So you don't know, this is only a 24-hour order, that's all this is. And the order is only made upon the Court's sole determination that this case is inappropriate for family court, and that it is appropriate for dependency court. All I'm doing *167 is making a legal determination based upon the standard for dependency that there is detriment or circumstances producing or likely to produce harm of a continuing nature putting the child at risk. That means I am overruling the legal department of the Department of Children and Families. As a judge I can overrule the legal department of [the] Department of Children and Families, and say that this case is not appropriate for family court. The decision to be made as to whether it is appropriate for a family court is just what [the mother's attorney] is complaining of ... and that is the delay and the lack of services that this Court can provide.
Mother's Attorney: I'm not complaining about the delay. I'm complaining because of the lack of due process.
Judge: Well, ma'am, your due process starts now. Your client has a right to counsel and to be represented in court. You are representing her in court. You are here representing her. ... At this point it would not behoove your client to testify under oath without ... your opportunity to speak to your client about the difference between family court and dependency court. ... You don't want to go forward here today. ....
Mother's Attorney: I do want to go forward, Your Honor. I have two experts sitting outside since ten o'clock this morning
....
Judge: At this point it is not appropriate for me to go forward with this hearing. I am not a dependency judge. I do not have the ability to properly present and listen to the evidence that you want to present. This is not the appropriate forum. This is my ruling. This hearing is over.
The hearing was over in twenty-five minutes, despite the fact that the judge had allotted two hours for the hearing.
Immediately after the hearing, the judge entered a form order entitled "Sua Sponte Dependency Shelter Order." The order contained the written findings required to place a child in shelter care pursuant to section 39.402(8)(h), Florida Statutes (2011). Among other findings, the judge found that "[t]he child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment." § 39.402(1)(a), Fla. Stat. (2011). The judge further found that "continuation of the child in the home is contrary to the welfare of the child because the home situation presents a substantial and immediate danger to the child's physical, mental, or emotional health or safety which cannot be mitigated by the provision of preventive services." § 39.402(8)(h)3., Fla. Stat. (2011). The order further transferred the case to the Palm Beach County juvenile court. Although the judge stated in the order that the mother was "served with [an] oral statement setting forth a summary of procedures involved in dependency cases [in] Palm Beach County," the order did not include the time, date, and location of any future hearing to occur in Palm Beach County. See § 39.402(8)(h)6., Fla. Stat. (2011) ("The order for placement of a child in shelter care ... must contain written findings ... [t]hat the court notified the parents ... of the time, date, and location of the next dependency hearing. ...").
The following day, that is, October 6, 2011, the mother filed a notice of appeal of the order. Later that day, a review hearing commenced before the Palm Beach County juvenile court judge. The father's attorney, the guardian, and a Department representative (who was not the investigator) *168 were present. The mother's attorney and the mother were absent. When the issue of the mother's absence arose, the father's attorney represented that "notice was given in open court [yesterday], orally, not in writing ... by [the Department's investigator] that there would be this hearing today.... [W]e all heard [the investigator] say that there would be a hearing at one thirty today on the third floor of this courthouse." The father's attorney later represented, "I can order that transcript, Your Honor, but it was very clear on the record." Despite that representation, the October 5th transcript now before this court does not contain any such statement by the investigator.
In any event, the Palm Beach County juvenile court judge proceeded with the review hearing. The following exchange occurred between the judge and the Department's representative:
Representative: [T]he Department's position on this case is that it is, in fact, a custody order that transferred custody from one parent to another. And that the case law is and the interpretation of Chapter 39 of the statutes is that when a child is placed in the custody of the parent that it is not, in fact, a shelter.
....
Representative: We would be asking that this case stand until further order of either this court or the family court case in Broward County.
Judge: What do you mean stand?
Representative: Well ... I don't think I have jurisdiction to ask that it be rescinded or vacated. ...
Judge: Are you filing a petition for dependency against any parent?
Representative: That has not been decided yet.
The following day, that is, October 7, 2011, the Department filed its notice of intent not to file a dependency petition in the Palm Beach County case. Four days later, on October 11, 2011, the father filed a dependency petition in the Palm Beach County case. The father's petition referred to the Broward County family court judge's action on October 5th as a "Sua Sponte Dependency Order placing the minor child in the shelter custody of the Department of Children and Families." The father's petition later referred to that order as a "Shelter Order."
On October 26, 2011, the Palm Beach County juvenile court judge held an arraignment on the father's petition. The mother entered a denial to the petition. The mother then asked the court whether the father would be required to show probable cause in support of his petition. The judge responded: "There's already been a probable cause finding." The mother replied: "There has never been a probable cause determination." The judge responded: "File a written motion. If there hasn't been one and it has to be addressed, we will address it."
Having now addressed the detailed history of the extensive record which the parties have presented, we now turn to the mother's appeal of the Broward County family court judge's "Sua Sponte Dependency Shelter Order." The mother essentially raises two arguments: (1) the Broward County family court judge denied her right to due process by not giving her the opportunity to be heard before entering the order; and (2) the judge had insufficient evidence to find that the mother caused mental injury to the child. The father responds that: (1) the time for the mother to be heard was at the juvenile court review hearing on October 6th and the mother waived the opportunity to be heard by not appearing at that hearing; and (2) there was sufficient evidence to *169 show that the mother caused mental injury to the child.
Before we address the mother's arguments and the father's responses in more detail, we must address two preliminary issues: (1) the nature of the order on appeal; and (2) the basis of our jurisdiction.
Regarding the nature of the order on appeal, our colleague in partial dissent concludes that the order on appeal is an order to take the child into custody pursuant to section 39.401, Florida Statutes (2011), and not an order to place the child in a shelter pursuant to section 39.402, Florida Statutes (2011). According to our colleague, certain handwritten interlineations on the order, and the family court judge's oral pronouncements as she entered the order, make it clear the judge was issuing an order to take the child into custody, and not a shelter order.
We respectfully disagree with our colleague's conclusion. Although it is possible that the family court judge's initial intent at the October 5th hearing may have been to take the child into custody pursuant to section 39.401, the outcome of that hearing was a shelter order pursuant to section 39.402. We conclude this for several reasons: (1) the family court judge asked the Department's investigator, "Do you need me to sign a shelter order?"; (2) the judge later told the mother's attorney, "This is an actual shelter"; (3) the order which the judge signed is entitled "Sua Sponte Dependency Shelter Order"; (4) the order's body, including the judge's handwritten interlineations, contains the written findings required to place a child in a shelter pursuant to section 39.402(8)(h), Florida Statutes (2011), and Florida Rule of Civil Procedure 8.305(c) (2011); (5) the family court judge apparently transferred the case to the Palm Beach County juvenile court judge pursuant to section 39.402(12), Florida Statutes (2011) ("In the event the shelter hearing is conducted by a judge other than the juvenile court judge, the juvenile court judge shall hold a shelter review on the status of the child within 2 working days after the shelter hearing."); and (6) the father always has characterized the order on appeal as a "Shelter Order" under section 39.402 and has not suggested that the order was an order to take the child into custody pursuant to section 39.401. We agree with the father's characterization.
Regarding the basis of our jurisdiction, the mother's initial brief asserts that we have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iii) (2011) ("Appeals to the district courts of appeal of non-final orders are limited to those that ... determine ... the right to immediate ... child custody in family law matters."). The father's answer brief does not contest the mother's jurisdictional assertion. However, given the parties' and our recognition of the order on appeal as a shelter order, rule 9.130(a)(3)(C)(iii) cannot serve as a basis for our jurisdiction. See Guardian Ad Litem Program v. Dep't of Children & Families, 972 So.2d 871, 871 (Fla. 4th DCA 2007) ("Rule 9.130(a)(3)(C)(iii), which allows for appeals from orders determining custody in family law matters, does not encompass non-final orders in ... dependency proceedings.").
Thus, we treat the mother's appeal as a petition for writ of certiorari, for which we have jurisdiction. See Fla. R.App. P. 9.030(b)(2)(A) (2011) ("The certiorari jurisdiction of district courts of appeal may be sought to review ... non-final orders of lower tribunals other than as prescribed by rule 9.130."); L.M.B. v. Dep't of Children & Families, 28 So.3d 217, 218 (Fla. 4th DCA 2010) (accepting jurisdiction of a petition for writ of certiorari seeking to *170 quash the circuit court's shelter order on the ground that the circuit court refused to permit the parent to present evidence on the issue of whether the child should be removed).
To obtain certiorari relief, the mother must show that the Broward County family court judge: (1) departed from the essential requirements of the law in a manner so serious that it amounts to a miscarriage of justice; and (2) caused irreparable harm which cannot be remedied on appeal following a final order. K.G. v. Fla. Dep't of Children & Families, 66 So.3d 366, 368 (Fla. 1st DCA 2011).
Here, the mother has met both requirements. The judge's denial of the mother's request to be heard during the shelter hearing was a departure from the essential requirements of the law. See § 39.402(8)(c)3., Fla. Stat. (2011) ("At the shelter hearing, the court shall ... [g]ive the parents or legal custodians an opportunity to be heard and to present evidence.") (emphasis added); Fla. R. Juv. P. 8.305(b)(4) (2011) ("At the hearing, all interested persons present shall have an opportunity to be heard and present evidence on the criteria for placement provided by law.") (emphasis added); K.G., 66 So.3d at 368 (courts consistently have acknowledged that failing to honor a parent's right to be heard at a shelter hearing is a violation of due process). This departure is so serious that it amounts to a miscarriage of justice. Id. at 368-69.
Further, this departure caused irreparable harm which cannot be remedied on appeal following a final order. If the mother waits to raise this departure until she appeals a final order, "the entire proceeding will have been based on a denial of her due process rights." Id. at 368.
Florida Rule of Juvenile Procedure 8.305(b)(3) (2011) did not provide the judge with the authority to deny the mother's request to be heard. Subdivision (b)(3) provides: "The issue of probable cause shall be determined in a nonadversarial manner, applying the standard of proof necessary for an arrest warrant." (emphasis added). However, as we held in L.M.B., the right to be heard as provided in section 39.402(8)(c)3. "clearly controls over any perceived conflict within the language in [rule 8.305]." 28 So.3d at 219. We reasoned that "[i]f a parent is not permitted to be heard at the [shelter] hearing, and only [one side's] evidence will be considered, then the one-sided hearing would be a pointless formality. This is clearly not what the statute or rule contemplates." Id. (citation omitted). We added that "[t]he statutory right to be heard and to present evidence is buttressed by notions of procedural due process: a parent should have a meaningful opportunity to be heard on the key issue of the need for removal." Id. (citation and internal quotations omitted).
This case is virtually indistinguishable from the case presented to the first district in K.G. There, the first district granted a parent's petition for writ of certiorari on the basis that the judge denied the parent's request to be heard at the shelter hearing. As our sister court stated in its summary of the opinion, "[w]e are sympathetic to the [judge's] desire to conduct an expeditious and informal shelter hearing. However, those concerns do not outweigh the right of parents to be heard initially when faced with removal by the State of their children from their home." K.G., 66 So.3d at 368-69 (citation and internal quotations omitted).
As mentioned above, the father argues that even if the family court judge erred in denying the mother's request to be heard, the error was cured because the Palm Beach County juvenile court judge *171 conducted a review hearing on October 6th and the mother waived the opportunity to be heard by not appearing at that hearing.
We conclude that the occurrence of the review hearing did not cure the family court judge's error for two reasons. First, although the record indicates that the family court judge notified the mother that the shelter review hearing would occur before a juvenile court judge "within twenty-four hours," the record does not indicate that the family court judge notified the mother of the time and location of the shelter review hearing. § 39.402(8)(h)6., Fla. Stat. (2011); see also Fla. R. Juv. P. 8.305(b)(6)(D) (2011) ("The court shall advise the parent or legal custodian of ... the time, date, and location of the next hearing. ..."). Second, the record from the October 26th arraignment hearing in the dependency proceeding suggests that the juvenile court judge accepted the family court judge's probable cause finding even though the family court judge denied the mother's request to be heard during the shelter hearing. Because of the family court judge's error, the juvenile court judge cannot accept the family court judge's probable cause finding.
Having concluded that the mother has met the requirements to obtain certiorari relief on her due process argument, we do not reach her argument as to whether the family court judge had sufficient evidence to find that the mother caused mental injury to the child.
We note, however, that during the pendency of our review, the father notified this court that the parties entered into a temporary mediation agreement. The agreement allows the mother to have limited contact with the child. The parties dispute whether the mother's entry into the agreement has preserved or waived her challenge to the Broward County family court judge's "Sua Sponte Dependency Shelter Order." We conclude that the mother has not waived her challenge. The face of the agreement states that it is "temporary" and does not state that the mother has waived her challenge.
Based on the foregoing, we remand for the Palm Beach County juvenile court judge, within two working days of our mandate, to conduct a new shelter hearing at which the judge shall give the mother an opportunity to be heard and present evidence if the mother so requests. In order to avoid disruption of the child's current living arrangements, the parties shall remain bound by the temporary mediation agreement and the child shall remain in the father's custody pending the new shelter hearing. See E.G. v. Dep't of Children & Family Servs., 975 So.2d 1244, 1245 (Fla. 3d DCA 2008) ("In order to avoid disruption of the living arrangements of the ... child, the ... child should remain in her current placement pending the shelter hearing."). At the new shelter hearing, the juvenile court judge retains the discretion to continue the child in a shelter, which may continue to include the father's custody, if the evidence presented meets one or more of the criteria stated in section 39.402(1), Florida Statutes (2011). See § 39.402(2), Fla. Stat. (2011). If the evidence presented does not meet one or more of the criteria stated in section 39.402(1), then the judge shall order the father to return the child to the mother's custody.
Petition granted; remanded with directions to the Palm Beach County juvenile court judge.[1]
*172 CIKLIN, J., concurs.
CONNER, J., concurs in part and dissents in part with opinion.
CONNER, J., concurring in part and dissenting in part.
I concur with the majority in its determination that the mother is entitled to an expedited shelter hearing with appropriate notice and opportunity to be heard on the issue of probable cause and placement of the child. I respectfully dissent from the majority's conclusion that the family court judge conducted a shelter hearing and entered a shelter order.
The majority analyzes the order under review as a shelter order issued pursuant to section 39.402, Florida Statutes. I view the order as an order to take the child into custody pursuant to section 39.401, Florida Statutes. I concede the printed form order used by the family court judge has language which gives the appearance of a shelter order, and during the hearing the family court judge made statements to the effect she was entering a shelter order. However, the handwritten interlineations on the printed form and the oral pronouncements of the family court judge as she entered the order make it clear the family court judge did not consider herself as conducting a shelter hearing. Her oral pronouncements indicate she viewed herself as entering a temporary emergency pick up order for the protection of a child.[2]
It is axiomatic that a shelter order is to be entered after a shelter hearing. The majority correctly cites the law in Florida that during shelter hearings judges must give parents an opportunity to contest the probable cause determination and to be heard on the issue of placement of the child. In this case, the mother has not been given an opportunity to be heard at a shelter hearing, and that error needs to be remedied as soon as practical.[3]
As I perceive it, the family court judge heard testimony during a hearing that caused her to conclude there was probable cause to believe a child was being abused or neglected by a parent engaging in severe parental alienation behavior. Sworn testimony came from a protective services investigator for the Department of Children and Families and from a court-appointed guardian ad litem for the child. The family court judge concluded that *173 family court was not the appropriate forum to address the need to protect the child and that dependency court was the more appropriate forum. The family court judge was concerned that the Department did not take appropriate steps to protect the child by initiating a dependency proceeding, so she decided sua sponte to initiate such a proceeding by issuing an order to take the child into custody.
Section 39.01(68), Florida Statutes (2011), defines "shelter" as "placement with a relative or a nonrelative, or in a licensed home or facility ..." (Emphasis added.) Section 39.402(1), Florida Statutes (2011) states:
Unless ordered by the court under this chapter, a child taken into custody shall not be placed in a shelter prior to a court hearing unless there is probable cause to believe that:

(a) the child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment.
(Emphasis added.) This statute specifically authorizes, in appropriate situations, a court to place a child in shelter (with a parent) prior to affording a court hearing to the other parent. Section 39.402(2) further provides:
A child taken into custody may be placed or continued in a shelter only if one or more of the criteria in subsection (1) applies and the court has made a specific finding of fact regarding the necessity for removal of the child from the home and has made a determination that the provision of appropriate and available services will not eliminate the need for placement.
(Emphasis added.) The family court judge's order in this case complies with these statutory provisions.
Section 39.401, Florida Statutes deals with taking a child into custody. Subsection (1) addresses the circumstances that must exist to take a child into custody. Subsection (1) provides, "A child may only be taken into custody: (a) Pursuant to the provisions of this part, based upon sworn testimony, either before or after a petition is filed." Thus, the statute authorizes a judge to issue an order to take a child into custody based on sworn testimony, rather than an affidavit or petition. I read the statute to mean that during a hearing judges can sua sponte issue orders to take into custody and place children believed to be dependent and in need of protection into a shelter (with a parent). Consistent with the statute, Rule 8.300, Florida Rules of Juvenile Procedure, deals with taking a dependent child into custody. Subdivision (a) of the rule addresses taking a child into custody based on an affidavit or verified petition. Subdivision (b) addresses taking a child into custody by court order and provides, "The court may issue an order to take a child into custody based on sworn testimony meeting the criteria in subdivision (a)." Rule 8.300(c) outlines the legal requirements for an order to take into custody. It appears the family court judge's order meets all of the requirements of the rule.
Once a child is placed in shelter (with a parent), section 39.402(8)(a) requires a shelter hearing within 24 hours. Sections 39.402(3), (5), and (8) and rule 8.305 set forth all the notices and rights to a hearing for a parent affected by the order to take in custody. Because the mother was not given the proper notices and the opportunity to be heard at a shelter hearing, she must now be afforded the opportunity to contest the placement of the child with the father as soon as practical. As the majority points out, that includes the right to contest the probable cause determination.
*174 The law grants parents the due process right to participate in a shelter hearing after an order to take into custody has been issued. I find nothing in the law that gives parents a due process right to participate in the decision of a trial judge to issue an order to take a child into custody pursuant to section 39.401, Florida Statutes, even if that decision occurs during a hearing with the parents present.
As the majority points out, a hearing on the father's emergency motion was set to last for two hours and the family court judge terminated the hearing after twenty-five minutes without affording the mother the opportunity to present anything. Facially that may appear to be procedurally problematic given that there was another hour and a half of hearing time available. Arguably speaking, family court judges need to be prepared to occasionally conduct dependency proceedings, and the judge in this case had the time to conduct a full shelter hearing. However, the Department of Children and Families is typically involved as a party in dependency proceedings, and the judge in this case felt the Department should be involved. The Department's representative at the hearing indicated that if the judge entered the order to take into custody, the Department would probably file a dependency action. It seems likely the judge decided she could not proceed with a shelter hearing because a lawyer for the Department was not present.
I would grant the petition and order the trial court to conduct a proper shelter hearing within two working days from the issuance of our mandate, but I would not construe the order under review as a shelter order.
NOTES
[1] Nothing in this opinion should be construed as suggesting that a judge conducting a shelter hearing cannot proceed without hearing from a parent who does not appear after having been "given such notice as best ensures their actual knowledge of the date, time, and location of the shelter hearing." § 39.402(5)(a), Fla. Stat. (2011). This opinion merely addresses the requirements when the parent appears at a shelter hearing and requests to be heard.

Also, this opinion does not address a question which our colleague's partial dissent appears to raise, that is, whether a parent has a due process right to be heard when a family court judge, at a hearing at which the parent is present, considers taking a child into custody pursuant to section 39.401, Florida Statutes (2011), and: (1) the parent requests to be heard; (2) time is available on the court's calendar at which the parent can be heard; and (3) no harm can come to the child while the parent is being heard.
[2] This case points out a common problem: when judges do not regularly sit in dependency proceedings they sometimes forget the technical difference between an order to take into custody and a shelter order.
[3] As the majority points out, the mother was not given proper notice of the date, time, and place of the shelter hearing which the family court judge contemplated when she issued the order to take the child into custody. The failure to give proper notice of the shelter hearing may have occurred from the combination of two circumstances: the Department of Children and Families did not seek the order to take into custody, and the venue for the dependency proceeding was an adjoining county. Although the Department was not a party to the proceedings at the time the order was entered, sections 39.402(3) and (5)(a), Florida Statutes, require the Department to notify the parents of their rights and the date, time, and location of the shelter hearing.